STANDARD OIL COMPANY OF INDIANA *v.* ALLEN, ADMINISTRATOR.

[No. 23,753.    Filed March 31, 1920.    Rehearing denied May 28, 1920.]

1. TRIAL.—*Interrogatories.—Opposite Inferences.—General Verdict.* —Where the facts found by answers to interrogatories reasonably justify an inference in harmony with the general verdict and also an inference in conflict therewith, the former will prevail and the general verdict will be upheld.  p. 401.

2. MASTER AND SERVANT.—*Findings as to Relation.—Interrogatories.*—In an action under the Employers' Liability Act, though there was no direct finding in answers to interrogatories that the relation of employer and employe existed, but facts were found warranting the inference that such relation did not exist, a motion for judgment on the answers was properly overruled, if facts provable within the issues would have justified the inference that such relation existed.  pp. 401, 402.

3. MASTER AND SERVANT.—*Findings as to Relation.—Interrogatories.—Inferences.—General Verdict.*—Though the facts found by answers to interrogatories in an action under the Employers' Liability Act were such as to exclude all-inferences but the single inference that the relation of employer and employe did not exist, still such inference would not be conclusive against the

opposite inference drawn by the jury in support of the general verdict, since the jury was required to consider not only the facts found by such answers but also all other facts established by the evidence. p. 401.

4. TRIAL.—*General Verdict.—Presumptions.—Interrogatories.*—All reasonable presumptions are indulged in favor of the general verdict in passing on a motion for judgment on the answers to interrogatories, and where there is apparent conflict between facts disclosed by the answers and the general verdict the court on appeal will presume, in favor of the general verdict, that evidence was introduced in support of facts within the issues that would reconcile the conflict. p. 402.

5. APPEAL.—*Answers to Interrogatories.—General Verdict.—Evidence.—Conflict.*—In determining whether there is evidence to sustain the general verdict, the court on appeal will accept as true the facts found by answers to interrogatories, though there may be a conflict of evidence as to such facts. p. 402.

6. MASTER AND SERVANT.—*Proof of Relation.—Sufficiency of Evidence.—Interrogatories.*—In an action for the death of a boiler repairer, facts found by answers to interrogatories showing that the decedent had for many years been employed by the proprietor of a boiler repair shop as an expert repairer, that on the day of the accident resulting in his death he was sent by the proprietor to repair the defendant's tank, taking tools from the shop for the work, that wages for the work was paid by the proprietor to his widow, that the proprietor presented a bill to the defendant for the repairs and it was paid, and that the defendant never paid the decedent any wages, were not sufficient to show, nor to support an inference, that the decedent was temporarily employed by the defendant; and where the evidence most favorable to the plaintiff failed to show that any attempt was made by the defendant to direct the work, or to say or do anything relative thereto except to assent to the decedent's plans, or that any appliances were furnished by the defendant except on request as an accommodation, the showing was insufficient to support an inference that would reconcile the facts found by such answers with a general verdict for the plaintiff. pp. 404, 406, 408.

7. MASTER AND SERVANT.—*Relation.—Burden of Proof.*—In an action under the Employers' Liability Act, the burden is on the plaintiff to show that the relation of employer and employe existed. p. 405.

8. MASTER AND SERVANT.—*Independent Contractors.—Liability.*— Where one undertakes to do work as an independent contractor, there is no relation of employer and employe between an employe of such contractor and the person for whom the work is done. p. 405.

From Wayne Circuit Court; *Henry C. Fox,* Judge.

Action by Joshua Allen, administrator, against the Standard Oil Company of Indiana. From a judgment for the plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1394 Burns 1914, Acts 1901 p. 565, §10). *Reversed.*

*Samuel D. Miller, Frank C. Dailey, William H. Thompson, W. H. H. Miller, C. C. Shirley* and *Freeman & Freeman,* for appellant.

*C. E. Shively, Ray K. Shively* and *Joshua Allen,* for appellee.

LAIRY, J.—Appellee recovered a judgment against appellant in the trial court for damages resulting, as alleged, from the negligence of appellant in causing the death of Charles Lipscomb. Appellant prosecutes this appeal, assigning as error that the trial court erred in overruling its motion for judgment in its favor on the answers to interrogatories, notwithstanding the general verdict, and also in overruling its motion for a new trial.

It is conceded by both parties to this appeal that the complaint on which the action was tried was based on the theory that the injury which caused the death of Charles Lipscomb was suffered by him while he was in the employ of appellant within the meaning of §1 of the Employers' Liability Act. Acts 1911 p. 145, §8020a *et seq.* Burns 1914. It is likewise conceded that the case was tried and the judgment rendered in the trial court on the theory that the defendant was liable under the provisions of that act. As the provisions of that act apply only to cases in which the relation of employer and employe is involved, the

judgment in this case cannot stand unless there is evidence to show the existence of such relation.

Appellant asserts that the answers to the interrogatories returned by the jury with its general verdict show that no relation of employer and employe existed between appellant and Lipscomb at the time the latter received the injury which caused his death. If appellant were correct in this assertion the answers to interrogatories would be in direct conflict with the general verdict, which must rest on a finding of the existence of such relation.

The court has examined the facts found by the answers to interrogatories with some care. There is no direct finding that the relation of employer and employe did not exist, nor is it directly found that Lipscomb was not employed by appellant and engaged in its service when the injury occurred. Facts are found by such answers from which it might well be inferred that no such relation existed; but the jury in reaching its general verdict must be presumed to have drawn the opposite inference. Where the facts found by the answers to interrogatories are such as to reasonably justify one or the other of two opposite inferences, one of which would be in harmony with the general verdict and the other of which would be in conflict therewith, the inference drawn by the jury in support of its general verdict will prevail and the general verdict will be upheld. And, even though the facts found by the answers to interrogatories when considered alone were such as to give rise to the single inference that the relation of employer and employe did not exist, and to exclude all other reasonable inferences, still such inference would

VOL. 189—26

not be conclusive as against the inference drawn by the jury in support of its general verdict, for the reason that the jury, in drawing the inference on which its general verdict is based, was required to consider not only the facts found by the answers to interrogatories, but all other facts established by the evidence which could form a proper basis for the inference drawn.

It is well settled that all reasonable presumptions are indulged in favor of a general verdict in passing on a motion of this kind; and that, when the apparent conflict between the facts disclosed by answers to interrogatories and the general verdict is such as could be explained and reconciled by facts susceptible of proof within the issues, the court will presume, in favor of the general verdict, that evidence of such facts was before the jury. *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438, 78 N. E. 1033; *McCoy* v. *Kokomo R., etc., Co.* (1902), 158 Ind. 662, 64 N. E. 92; *Indianapolis, etc., R. Co.* v. *Lewis* (1889), 119 Ind. 218, 21 N. E. 660. Facts may have been proved within issues formed in the instant case, which, when considered in connection with the facts found by the answers to interrogatories, would justify the inference that the relation of employer and employe existed as alleged in the complaint. For the reasons stated the trial court did not err in overruling appellant's motion for judgment on the interrogatories.

In support of its second assignment of error, appellant takes the position that there is no evidence to show that the relation of master and servant existed between appellant and Lipscomb at the time of the injury on which this action is based.

In deciding whether there is evidence to sustain the verdict in the respect mentioned, this court will accept as true the facts found by the answers to interrogatories, even though there may be conflict of evidence as to some or all of the facts so found. *Evansville, etc., Traction Co.* v. *Spiegel* (1912), 49 Ind. App. 412, 94 N. E. 718, 97 N. E. 949; *Barr* v. *Sumner* (1915), 183 Ind. 402, 107 N. E. 675, 109 N. E. 193. In treating the facts so found as true, the court does not weigh evidence or invade the province of the jury. As to such facts the jury weighed the evidence and decided from a preponderance of the evidence that the facts so found are true. This court simply adopts the conclusion reached by the jury as to the truth of the facts found by the answers to the interrogatories.

The undisputed facts show that appellant company was engaged in operating a filling station at Richmond, Indiana, and that, in connection with the business there conducted, it maintained large tanks, used by it in the storage and distribution of gasoline. At the time Charles Lipscomb was injured he was engaged in repairing one of the gasoline tanks so maintained by appellant for the purpose of stopping a leak therein. After the gasoline remaining in the tank had been drained out by Lipscomb, he went inside of the tank for the purpose of making the repair, taking with him an electric light bulb attached to a socket by a cord. While he was so inside of the tank, holding the cord to which the light bulb was attached in his hand, the bulb came in contact with a pipe or the side of the tank and was broken while the light current was turned on. The spark thus produced ignited the fumes of gasoline inside the tank, and, as a consequence, Lipscomb was so burned as to cause his death.

The facts shown by the answers to interrogatories show that one Jacob Kern was the proprietor of a boiler shop in the city of Richmond, and was, and had been for many years, engaged in the business of repairing boilers, oil tanks and gasoline tanks in his shop and elsewhere in and near the city of Richmond. Charles Lipscomb was an experienced boiler maker and tank repairer, having worked at that trade for about fifteen years, during which time he was employed by Jacob Kern, and on the date of his injury he was employed by Kern as a boiler maker and repairer of oil tanks and gasoline tanks. Lipscomb went to the plant of appellant on the day of the accident, where he was sent as an employe of Kern. Lipscomb and Graham, who was also an employe of Kern, brought with them from the shop of Kern to the plant of appellant all necessary tools for the performance of the work, and all necessary electrical appliances for such work, except the electric light bulb which was used in lighting the interior of the tank. At the time of his injury and prior thereto Lipscomb was receiving wages from Kern at the rate of twenty-five cents an hour and time and one-half for overtime, holidays and Sundays. The repairs begun on the day Lipscomb was injured were completed by Graham on the following day. The bill for such repairs was rendered to appellant by Kern, and was paid by appellant. Kern paid to the widow of Lipscomb the wages due him at the time of his death, including the time he worked on the day on which he was injured. No wages were ever paid by appellant either to Lipscomb or to his widow.

The burden rested on appellee to produce evidence to show that the relation of employer and employe

existed between appellant and Lipscomb. It is

7. clear that the facts stated, as found by the answers to the interrogatories, and which are accepted as true, do not show such relation,

8. and it is equally clear that such relation cannot be rightfully inferred therefrom by any fair and reasonable mind. On the contrary, the facts so found seem to indicate clearly that Kern undertook to repair the tank of appellant as an independent contractor, and that Lipscomb was an employe of Kern engaged in the performance of the contract. If such is the case, no relation of employer and employe existed between appellant and Lipscomb, and appellant cannot be held responsible for any injury resulting to the latter on the theory that such a relation existed. *Prest-O-Lite Co.* v. *Skeel* (1914), 182 Ind. 593, 106 N. E. 365, Ann. Cas. 1917A 474; *New Albany Forge, etc., Mill* v. *Cooper* (1892), 131 Ind. 363, 30 N. E. 294.

Appellee asserts, however, that there is evidence to show the existence of other facts which, when considered in connection with the facts disclosed by the answers to interrogatories, justify the inference that the relation of employer and employe existed between appellant and Lipscomb at the time of the injury, notwithstanding the showing made by the answers to interrogatories that the latter was at the time regularly paid by Kern at a stipulated wage.

There are cases holding that, where a person is under the general employment of one person, and, where, by some arrangement or contract between his employer and a third person, he is taken or sent to the premises of such third person to perform services for the latter under his direction, supervision and con-

trol, a relation arises which, under the common law, imposes a duty on such third person to exercise care for the safety of the servant while so employed, even though the servant during the time he was engaged in service for such third person received a stipulated wage from his employer, who in turn received from such third person payment for the work performed. In some of the cases it has been stated, somewhat loosely perhaps, that the relation thus shown is that of employer and employe. *DeHority* v. *Whitcomb* (1895), 13 Ind. App. 558, 41 N. E. 1059; *Indiana Iron Co.* v. *Cray* (1898), 19 Ind. App. 565, 48 N. E. 803; *Green* v. *Sansom* (1899), 41 Fla. 94, 25 South. 332.

An examination of the evidence in this case will show that it does not disclose a state of facts which brings it within the rule announced and applied in the cases cited. In the instant case the evidence shows that Lipscomb and his coworker were sent to the premises of appellant to do a job of work, to accomplish a certain result—to stop the leak in the tank. Appellant by its manager did not undertake to superintend the work or to direct the details of its execution. The workmen were left free to accomplish the result of the work by their own methods, appellant's superintendent lending them only such assistance as was requested.

The evidence most favorable to appellee, on this phase of the case, shows that, when Mr. Lipscomb and Mr. Graham went to the filling station with their tools to do the work on the tank, they met Mr. Grant, the superintendent for appellant, and that he took them to the tank that was leaking and needed repair. They looked it over, after which Mr. Graham, in the presence of Mr. Lipscomb,

said to Grant, "We can put a patch on this, or we can run four or five copper plugs across here, and, if it was my tank, I would put in the copper plugs." Mr. Grant said, "All right, do it that way." After this was said, Graham suggested that it would be a good idea to look inside of the tank. He testified that he turned to Grant and said, "Where can we get a light so that we can see." In response to this Grant said, "I think we can connect it up to this droplight right above the desk." Thereupon Lipscomb and Graham straightened out the extension cord which they had brought with them and connected the parts, while Grant took the light bulb out of the socket and screwed in the connection on the extension cord. Mr. Grant then connected the light bulb to the other end of the extension cord and carried it out to the tank and handed it up to Lipscomb when he was ready to go into the tank. Lipscomb remained in the tank only a minute or two, after which he came out and reported to Graham that there was gasoline in the tank. Mr. Graham then told Grant, in substance, that the gasoline would have to be drained out before the work could be done. Grant said that they had drained out all they could when Graham suggested that they drill a hole and draw it out. Grant said, "What will you do with the hole?" Graham said, "Tap it out and plug it up," and Grant said, "Go ahead." They drilled the hole, drew out about ten gallons of gasoline and then went to dinner. They returned in the afternoon and drilled four holes, after which Mr. Lipscomb again went inside of the tank. Mr. Grant was in the office when they returned from dinner, but he and Mr. Ball, who was also employed by appellant, were out where the work was being done at the time

Mr. Lipscomb entered the tank. The lead cord had not been disconnected, and, when Mr. Lipscomb got up on the tank ready to enter it, Grant handed the light to Ball, who was also on the tank, and Ball handed it to Lipscomb. At this time a rope about the size of a clothesline was fastened about the waist of Mr. Lipscomb, and Mr. Ball held the line while Lipscomb was in the tank, letting it out when he moved away from the manhole and taking it up when he approached. When Mr. Lipscomb attempted to climb out of the tank the electric light bulb came in contact with a pipe and was broken, causing the explosion.

There is no evidence to show that appellant's superintendent gave any directions concerning the work, or that he took any part therein, except as heretofore stated. Appellee contends that the facts thus disclosed are sufficient, when considered in connection with the facts shown by the answers to the interrogatories, to justify an inference that the relation of employer and employe existed between appellant and Lipscomb. This contention cannot be sustained. Appellant's manager furnished no appliances to be used by the workmen except such as he furnished on their request as a matter of accommodation. He did not attempt to direct the work as to the details of its performance, but simply gave his assent to suggestions made by the workmen as to the character of the repairs to be made, and as to the means to be adopted in draining the tank. Nothing that was said or done by either Grant or Ball can be regarded as sufficient to afford the slightest foundation for the inference for which appellee contends.

Appellee also calls the attention of the court to a

statement in the testimony of Mr. Kern to the effect that he did not contract for work; that he had more work than he could do, and that he furnished men. This statement, when considered in connection with the other testimony of the witness, does not help appellee. He testified that he employed Lipscomb and the other man at a fixed wage of twenty-five cents an hour, and that they were paid for the time they put in at the shop as well as for the time they expended on work which they were sent out to do. He said that, when he received an order for work to be done outside, the men would go out and do it, and he would send the bill charging forty cents an hour for the time expended on the work. He stated that the order for the work in this instance came by phone, that he did not know that he was present when the order came in, but that Lipscomb was the head man in the shop, and answered the phone as often as witness did. Witness stated that he had frequently done work for appellant before, and that he always sent the bill to appellant and collected the money as he did in this case.

The court holds that there is no evidence to show that Lipscomb was an employe of appellant within the meaning of the statute on which this action is based.

Judgment reversed, with directions to sustain appellant's motion for a new trial.

Harvey, J., absent.