**BOARD OF TRUSTEES OF the TOWN OF WINAMAC, Appellant–Defendant,**

v.

**Bryon HENRY and Joan Henry, Appellees–Plaintiffs.**

**No. 50A05–9101–CV–13.**

Court of Appeals of Indiana, Fifth District.

Aug. 14, 1991.

Rehearing Denied Sept. 20, 1991.

---

Steven P. Polick, Knight, Hoppe, Fanning & Knight, Ltd., Schererville, for appellant-defendant.

Russell D. Millbranth, Winamac, for appellees-plaintiffs.

BARTEAU, Judge.

Appellant-defendant Board of Trustees of the Town of Winamac ("Winamac") brings this interlocutory challenge to the trial court's denial of Winamac's motion for partial summary judgment against appellees-plaintiffs Byron and Joan Henry ("the Henrys"). The issue presented is whether the Henrys' notice of tort claim satisfied the content requirements of Ind.Code 34-4-16.5-9. We affirm.

## BACKGROUND

Under I.C. 34-4-16.5-7, tort claims against a political subdivision are barred unless the plaintiff files a notice of claim with the governing body of the subdivision within one hundred eighty days of the loss. Under I.C. 34-4-16.5-9 (hereinafter § 9), the notice of claim must contain certain information:

> The notice ... shall describe in a short and plain statement the facts on which the claim is based. The statement shall include the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice.

I.C. 34-4-16.5-9

The Henrys timely filed the following tort claim against Winamac:

> On or about the 29th day of July and the 31st day of July, 1987, Byron Henry and Joan Henry, husband and wife, residents of the Town of Winamac, State of Indiana experienced flooding and the presence of raw sewage in the basement of their residence which ... resulted from what appears to be inadequate drainage and sewage facilities of the Town of Winamac. The flooding ... and the ... raw sewage ... caused damage to the residence and property of [the Henrys]. As a result ... [the Henrys] were required to take steps to correct damages sustained in the [two] incidents....
>
> [The Henrys] were required to take those steps necessary to place their residence back into as good a condition as the residence could be placed prior to [the flooding] including but not limited to removing water, removing sewage from the basement of the residence, replacement of carpeting, replacement and/or repair of items of household goods and furnishings.
>
> [The Henrys] experienced discomfort and continue to experience discomfort as a result of the Town of Winamac's failure to adequately provide drainage and sewage facilities to prevent water flooding the basement of [the Henrys] and the presence of raw sewage in the basement....
>
> [The Henrys], as a result of the negligence of the Town of Winamac (Town

Board of Trustees), sustained losses to their property and damages to their persons in a sum totalling not less than Thirty Thousand ($30,000.00).

The residence of [the Henrys] is [street address in Winamac].

Record at 5a–5b.

It is undisputed that the above notice was filed within the 180–day limit, that the Town of Winamac is a political subdivision, and that the Board of Trustees is its governing body. The issue before us is whether Winamac is entitled to summary judgment as to personal injuries allegedly suffered by Byron Henry as a result of the flooding. Winamac argues that Byron Henry's claims for personal injury are barred because they were not specifically mentioned in the Henrys' § 9 notice.

The Henrys filed a complaint based on the above notice of claim on July 28, 1989. Winamac answered on October 16, 1989 and began discovery. In January, 1990 in response to an interrogatory and again in May, 1990 during a deposition, Byron Henry claimed a hip injury resulted from his efforts in cleaning up the alleged flooding:

(Deposition testimony)

Q. Just briefly, what are the nature of the personal injuries that you are claiming were connected to these flooding incidents?

A. I think that I have suggested that I have two total hip replacements. In November of 1987, I had to have the right hip replacement replaced, the pin broke.

Q. Is that the extent of your claim for personal injury or physical injury that you believe is attributable to these flooding incidents?

A. I am not so sure that I understand your question.

Q. What I want to know is, if I understand you correctly, you are suggesting, you haven't really stated it yet, but you're suggesting that these floods in 1987 may have caused you to get the hip replacement again or may have been, had some bearing?

A. May have broken the pin, that's right, sir.

. . . .

Q. You believe that these flooding incidents may have aggravated the problem with your hips?

A. Yes, sir.

Record at 67.

Winamac in September, 1990 moved for partial summary judgment on the issue of personal injuries, arguing that the Henrys' notice fell short of the "extent of loss" requirement of § 9. The trial court entered a general denial and certified the question for our interlocutory review. We accepted jurisdiction of the appeal under Ind.Appellate Rule 4(B)(6)(b) and (c) on May 9, 1991.[1]

## DISCUSSION

Our supreme court in *Collier v. Prater* (1989), Ind., 544 N.E.2d 497 reviewed case law on the question whether a tort claim notice satisfies the requirements of § 9. The following fundamentals appear in *Collier:*

1. § 9 is in derogation of the common law and accordingly is to be strictly construed against limitations on a claimant's right to sue. *Collier,* 544 N.E.2d at 498 (citing *Sherfey v. City of Brazil* (1938), 213 Ind. 493, 13 N.E.2d 568).[2]

---

1. In the exercise of our discretion under Ind.Appellate Rule 10(A), we hereby deny Winamac's request for oral argument. Also, we have chosen to disregard the Henrys' untimely answer brief. Therefore, we apply "a less stringent standard of review . . . ." *Johnson County Rural Elec. Membership Corp. v. Burnell* (1985), Ind. App., 484 N.E.2d 989, 991. We may reverse upon a showing by Winamac of *prima facie* error, that is, error "appearing at first sight . . . or on the face of the argument." *Matson v. Matson* (1991), Ind.App., 569 N.E.2d 732, 733. As a final preliminary consideration, we note that "in the actual work of construction and in

the maintenance of sewers and drains, governments act ministerially and their negligence in these particulars may therefore be the basis of an action." *Hodge v. Town of Kingman* (1988), Ind.App., 519 N.E.2d 1266, 1269.

2. This court has observed a distinction in construing the elements of notice, writing "the notice statute is to be strictly construed as to giving timely notice to the proper officers, but liberally construed as to whether the notice is sufficiently definite as to time, place, nature, etc. of the injury." *Burggrabe v. Board of Pub.*

2. A notice is sufficient if it "substantially complies" with § 9, because "[t]he purpose of the notice statute being to advise the city of the accident so that it may promptly investigate the surrounding circumstances, we see no need to endorse a policy which renders the statute a trap for the unwary *where such purpose has in fact been satisfied.* *Collier,* 544 N.E.2d at 498–99 (quoting *Galbreath v. City of Indianapolis* (1970), 253 Ind. 472, 479–80, 255 N.E.2d 225, 229) (emphasis from *Galbreath* ).

3. What constitutes substantial compliance is a question of law, although fact-sensitive. *Collier,* 544 N.E.2d at 499.

4. "In general, a notice that is filed within the 180 day period, informs the municipality of the claimant's intent to make a claim and contains sufficient information which reasonably affords the municipality an opportunity to promptly investigate the claim satisfies the purpose of the statute and will be held to substantially comply with it." *Collier,* 544 N.E.2d at 499.

5. "The crucial consideration [in deciding whether a notice substantially complies with § 9] is whether the notice supplied by the claimant of his intent to take legal action contains sufficient information for the city to ascertain the full nature of the claim against it so that it can determine its liability and prepare a defense." *Collier,* 544 N.E.2d at 500.

In *Collier,* the supreme court observed that it was squarely faced for the first time with the question whether the content of a particular notice of claim substantially complied with § 9. The notice in question had been deemed inadequate by the trial court, whose grant of summary judgment to the defendants was affirmed by this court in an unpublished opinion. The supreme court vacated that affirmance, and reversed the trial court decision.

The defendants had assailed the notice for failure to include the place or date of the injury-producing event. With an eye to the case before us, we observe also that the notice in *Collier* failed to specify the nature of the personal injury, but rather merely stated the plaintiff sought "damages sufficient to compensate him for medical treatments required as a result of the injuries sustained during his arrest." *Collier,* 544 N.E.2d at 499. The notice contained not another word regarding such injuries, leaving the defendants unaware as to whether the alleged injuries had been visited upon the claimant's head, spine, or hip, perhaps.

In holding the notice sufficient to satisfy § 9, the supreme court imposed an obligation on the defendants to investigate the facts underlying a tort claim in cases where the notice of claim supplies enough information to ascertain the nature of the claim. The notice in *Collier* informed that claimant Robert Collier alleged injuries during the course of his arrest by two named police officers. The court evaluated the situation:

> That Collier's attorney did not include the place or date of the event producing the injury is of no great moment here. The city needed only to contact the officers involved or the police department and have them determine from the records they are required by statute to keep ... when Collier was arrested. It is inconceivable that the same two officers would have arrested so many Robert Colliers that the city's investigation would be stymied.

*Collier,* 544 N.E.2d at 500.

In the present case, Winamac has somewhat myopically focused on a single phrase in the Henrys' notice, that stating the Henrys "experienced discomfort and continue to experience discomfort." However, the town has overlooked the expression in the penultimate paragraph of the Henrys' notice that they had "sustained ... damages to their persons...."

We consider the Henrys' notice no less sufficient than that in *Collier.* In both cases, the notice lacked specificity as to the claimed injury. We fail to see any hindrance to the town's ability to "ascertain the full nature of the claim ... so that it

*Works* (1984), Ind.App., 469 N.E.2d 1233, 1235,

*reh'g denied, trans. denied.*

[could] determine its liability and prepare a defense," *Collier*, 544 N.E.2d at 500, resulting from such non-specificity.

As long as a notice "reasonably affords the municipality an opportunity to promptly investigate the claim," *Collier*, 544 N.E.2d at 499, the purpose of § 9 will be considered satisfied, and such a notice will accordingly be held adequate. Here, Winamac learned from the Henrys' notice that they sought recovery for property losses and personal injuries from the sewage back-up in their basement. At that point, it became incumbent on the town, just as in *Collier*, to initiate an investigation. Under the circumstances of the Henrys' case, the town needed to conduct discovery to prepare its case. As soon as discovery began, Winamac became apprised of the specifics of Byron Henry's claim for injury to his hip. In light of Henry's deposition testimony that the hip injury allegedly resulting from the flooding occurred in November, 1987, between the time of the flooding and the filing of the notice of claim, we agree with Winamac that a better notice would have included specific mention of such facts. However, following the lead of the supreme court in *Collier*, we cannot condemn the Henrys' notice on such grounds. *See also Mills v. American Playground Device Co.* (1980), Ind.App., 405 N.E.2d 621, *reh'g denied* (1981), 427 N.E.2d 1130 (notice revealing existence of injury, but stating extent unascertainable, held to substantially comply). Strictly construing § 9 against limitations on a claimant's right to sue, we hold that the notice in question substantially complied with the statute, because it afforded Winamac a reasonable opportunity to promptly investigate the Henrys' claim for personal injuries. We accordingly affirm the trial court's denial of Winamac's motion for partial summary judgment on the issue of personal injuries.[3]

We are unpersuaded that the cases relied upon by Winamac require a different re-sult. In *Sauders v. County of Steuben* (1988), Ind.App., 527 N.E.2d 222 the plaintiff's notice stated that her ward had suffered brain damage during a suicide attempt while detained in the county jail, and alleged the county had negligently failed to monitor the ward. Later, in her complaint, the plaintiff alleged that her ward had suffered a head injury in a motor vehicle collision with a police officer just prior to his detention. This court affirmed partial summary judgment for the county on issues related to the collision, because "the county was not notified of the circumstances surrounding the accident and was not aware that it should investigate a claim regarding head injuries...." *Id.* at 224.

In *Hedges v. Rawley* (1981), Ind.App., 419 N.E.2d 224, *reh'g denied, trans. denied* the trial court awarded the plaintiffs $25,000 against the city (their employer), and their supervisor, for slander and malicious prosecution. The city appealed, arguing that the notice as to slander was deficient. The court of appeals agreed, and reversed, because the notice, requesting only back pay and reinstatement, lacked any mention of slander.

In *City of Tell City v. Noble* (1986), Ind.App., 489 N.E.2d 958, *reh'g denied, trans. denied* the plaintiff Noble, injured in a collision with a city truck, won a jury verdict of $300,000 against the city. The court of appeals reversed, holding the city immune. Judge Ratliff, concurring, addressed the notice issue and found Noble's notice insufficient. Noble's notice informed the city of possible liability under *respondeat superior* theory, stating that the truck's driver, a city employee, did not yield the right of way at an unmarked intersection. When it later developed that the city was not vicariously liable because the collision occurred when the employee was off-duty and driving on personal business, Noble amended his complaint to al-

---

**3.** We note ambiguity as to the scope of the denied motion, the first sentence of which requested summary judgment as to "any claim made or to be made for personal injuries," though the final sentence sought summary judgment "as to plaintiffs' claims regarding Mr. Hen-ry's hip replacement." For guidance to the lower court, our decision here should be treated as affirming the denial of a motion for summary judgment directed against any claims for personal injuries flowing from the flooding incidents of July 29 and 31, 1987.

lege the city was negligent for failing to install a stop sign at the intersection.

Judge Ratliff wrote:

The notice given here made no mention whatever of the failure of the city to erect a stop sign at the intersection as a causal factor or as a basis for Noble's right of recovery against the city. Rather, the notice referred only to the failure of the city's employee to yield the right of way at an unmarked intersection. Although substantial compliance with the notice requirement of the Tort Claims Act is sufficient where the purpose of the notice requirement is satisfied, ... a notice which is in effect no notice of the claim asserted in the suit filed cannot, and does not suffice.... There was no notice given concerning the failure to erect a stop sign, hence, no action can be maintained against the city on that ground.

*City of Tell City,* 489 N.E.2d at 965.

In *Sauders, Hedges,* and *City of Tell City,* the defendants were granted summary judgment due to the plaintiffs' midstream change of the theory of the case. Such redirection has not occurred here—the Henrys have not deviated from the statement in their notice of tort claim that they were injured in their property and persons because of flooding in their basement from the Winamac sewer system. Thus, we find in the foregoing cases no reason to reverse the lower court's denial of the town's motion for partial summary judgment.

AFFIRMED.

SHARPNACK and CONOVER, JJ., concur.